UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT JASKULSKI,

    Plaintiff,

v.                                       Case No: 8:23-cv-01565-KKM-TGW

BERGER TRANSFER
& STORAGE, INC.,

    Defendant.
_____

## ORDER

On May 13, 2023, Robert Jaskulski sued Berger Transfer & Storage, Inc. in state court, alleging handicap discrimination and retaliation under the Florida Civil Rights Act (FCRA). *See* Compl. (Doc. 1-1). Berger removed the case to federal court after being served with the complaint on June 27. *See* Notice of Removal (NOR) (Doc. 1) at 1–2. Jaskulski now moves to remand the case to state court based on the lack of diversity jurisdiction. Mot. to Remand (MTR) (Doc. 16). Because I conclude that Berger has carried its burden to establish jurisdiction, I deny Jaskulski's motion.

I.   BACKGROUND

Jaskulski's complaint stated that the suit was "for damages in excess of $50,000, exclusive of interest, fees, and costs, and for declaratory relief." Compl. ¶ 1. An

accompanying civil cover sheet certified that "the estimated amount of the claim" was between "$30,001 - $50,000." Civil Cover Sheet (Doc. 1-3) at 1.

The complaint explained that Jaskulski had started working for Berger as a driver recruiter sometime in January 2022 and that he was terminated on February 18 of that same year. *Id.* ¶¶ 10, 18. The complaint alleged that this termination amounted to discrimination based on Jaskulski's obsessive compulsive and panic disorders and retaliation for requesting time off work while hospitalized for those disorders. *See id.* ¶¶ 14, 18. For the discrimination count, Jaskulski requested "[c]ompensation for lost wages, benefits, and other remuneration"; "[r]einstatement . . . to a position comparable to [his] prior position, or in the alternative, front pay"; "[a]ny other compensatory damages, including emotional distress, allowable at law"; "[p]unitive damages"; "[p]rejudgment interest on all monetary recovery obtained"; and "[a]ll costs and attorney's fees incurred in prosecuting these claims." *Id.* at 4. The retaliation count proposed a similar list of remedies but employed slightly different language, requesting both "[r]einstatement . . . to a position comparable to [his] prior position, with back pay plus interest, pension rights, and all benefits" and "[f]ront pay" as separate remedies *Id.* at 5.

Berger removed the case to this Court, citing diversity jurisdiction under 28 U.S.C. § 1332. *See* NOR at 1–2. Jaskulski moves to remand, arguing that Berger has not shown that the amount in controversy is greater than $75,000. MTR at 3–10.

## II. LEGAL STANDARDS

United States district courts have diversity jurisdiction if the parties are of diverse citizenship and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). In removal cases, "the burden is on the party who sought removal to demonstrate that federal jurisdiction exists." *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1281 n.5 (11th Cir. 2001). The removing party must show, "by a preponderance of the evidence, that the amount in controversy can more likely than not be satisfied." *See id.* "[A] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010). But "[a] conclusory allegation in the notice of removal" that the amount in controversy is satisfied, "without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden." *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319–20 (11th Cir. 2001).

To evaluate the amount in controversy, a court may look to the documents that the defendant received from the plaintiff, along with the removal attachments. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 88 (2014); *Pretka*, 608 F.3d at 755 ("Defendants may introduce their own affidavits, declarations, or other documentation" to show that the amount in controversy exceeds $75,000). A court may draw reasonable

3

deductions and inferences from these documents using "judicial experience and common sense." *Roe v. Michelin N.A., Inc.*, 613 F.3d 1058, 1061–62 (11th Cir. 2010).

## III.   ANALYSIS

Jaskulski's motion turns on whether Berger has shown that the amount in controversy exceeds $75,000 by providing "specific factual allegations establishing jurisdiction." *Pretka*, 608 F.3d at 754.

Berger attached the declaration of Zachary Roy, one of its human resources managers, to the notice of removal. *See* Roy Dec. (Doc. 1-12). Roy's declaration states that, at the time of his termination, Jaskulski was paid an annual salary of $75,140 and "was also eligible for benefits under the terms of [Berger's] benefits plan." *Id.* Berger asserts two jurisdictional theories: (1) that Jaskulski's claim for back pay satisfies the amount in controversy requirement based on his annual salary at time-of-termination, and (2) that the other forms of relief requested in the complaint push the claim over the line. NOR at 2. Jaskulski argues in his motion to remand that the amount in controversy must be determined at the time of removal, and so only back pay that had accrued by July 13, 2023, should count. MTR at 3–7. He also contends that the additional relief requested in the complaint cannot carry Berger's burden as to the difference between the undisputed back pay claim and the amount in controversy requirement. *Id.* at 7–11. Berger responds that Jaskulski has made several demands of well over $75,000 and that he concedes an amount

4

in controversy startling close to the requirement based on back pay alone. Jaskulski replied to Berger's response on September 11, 2023. *See* (Doc. 20).

I begin with back pay, on which I agree with Jaskulski. *See Scott v. Walmart, Inc.*, 528 F. Supp. 3d 1267, 1275 (M.D. Fla. 2021) (Mizelle, J.) (recognizing an intra-district split of authority on this question and "declin[ing] to consider back pay that accrued or will accrue after the date of removal" for purposes of the amount in controversy requirement). Jaskulski was unemployed for 22 weeks following his termination, and then worked a lower-paying job with an annual salary of $41,600 for the next 52 weeks until removal. MTR at 5. Together, projected lost wages for these periods add up to just over $65,000. ([22/52 * $75,140] + [[$75,140 - $41,600] * 52/52] = $65,330).[1] That leaves Berger to prove an additional $9,670.01 to exceed the jurisdictional threshold.

In hopes of bridging the gap, Berger offers Jaskulski's claim for attorney's fees, three settlement demands, and the smattering of other relief requested by the complaint. *See* Resp. to MTR (Doc. 17) at 3–8. Although a close question, I conclude that this additional evidence shows, by a preponderance of the evidence, that there is at least an additional $9,670.01 in controversy beyond the agreed-upon amount of back pay. Thus, the amount in controversy requirement is satisfied and the court has diversity jurisdiction.

---

[1] Jaskulski's declaration, attached to his motion to remand, states that his damages for lost wages are "approximately $68,934.99" through August 14, 2023. Jaskulski Dec. (Doc. 16-1) at 2. As his own motion states, however, the relevant date for jurisdictional purposes is July 13, 2023, the date of removal. *See* MTR at 5; *Scott*, 528 F. Supp. 3d at 1275.

5

"The general rule is that attorneys' fees do not count towards the amount in controversy unless they are allowed for by statute or contract." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 808 n.4 (11th Cir. 2003). Because the FCRA allows courts to award the prevailing party "reasonable attorney's fees and costs," FLA. STAT. § 760.021(4), I can consider Jaskulski's claim for attorney's fees, at least those incurred before July 13, 2023, as part of the jurisdictional amount. *See Scott*, 528 F. Supp. 3d at 1278–79. Berger does not provide a specific estimate of the amount of attorney's fees incurred before removal but asserts that it will inevitably bring the total amount in controversy over $75,000 because counsel drafted Jaskulski's EEOC charge and has been engaged since at least April 5, 2022. Resp. to MTR at 6. Without "provid[ing] the Court with the information necessary to calculate attorney's fees," Berger's bare assertions are not enough to prove by a preponderance of the evidence that Jaskulski had incurred the entire $9,670.01 of attorney's fees necessary to meet the amount in controversy requirement at the time of removal. *See Scott*, 528 F. Supp. 3d at 1278; *see also Pretka*, 608 F.3d at 753–54 (explaining that "without facts or specific allegations, the amount in controversy could be divined . . . only through speculation," and "that is impermissible" (quotations omitted)).

Finally, Berger offers several demand letters and the complaint's remaining claims for relief. Resp. to MTR at 3–5, 7–8. "[D]istrict courts often look to pre-suit demand

6

letters to determine the amount in controversy." *Packer v. Kimberly-Clark Worldwide, Inc.*, 608 F. Supp. 3d 1192, 1195 (M.D. Fla. 2022) (Mizelle, J.). But there is a difference between a demand letter that "roots the [settlement] offer in a level of detail that resists [any] attempt to brush it aside as simple negotiation tactics," *Packer*, 608 F. Supp. 3d at 1194–95, and "a barebones pre-suit demand letter," which is generally "insufficient to demonstrate that the amount in controversy plausibly exceeds $75,000," *Carew v. Desilet*, No. 8:20-cv-2981, 2021 WL 651370, at *2 (M.D. Fla. Feb. 19, 2021) (Mizelle, J.) (quotations omitted). The demand letters here are mostly of the latter variety. The first and most detailed of the three, for $150,000, is pre-suit and merely repeats the allegations and requests for relief contained in the complaint. *See* Demand Letters (Doc. 17-2) at 2–3. After Berger rejected that offer and countered with $11,000, Jaskulski reduced his demand to $70,000. *See id.* at 5–9. But the day after Jaskulski moved to remand, he revised the demand upwards to $140,000. *See id.* at 12. The second and third demand letters contain no other supporting facts.

On the one hand, Jaskulski's demand letters contain little factual detail not already present in the complaint. And his second demand was only for $70,000, which closely tracks the amount of back pay that the parties agree was in controversy at the time of removal. On the other, the circumstances of Jaskulski's most recent post-suit demand suggest that he possessed a contemporaneous belief that the amount in controversy was

7

well over $75,000 soon after removal. And that belief was reasonable, given (1) the substantial back pay established as in controversy before removal, (2) Jaskulski's ability to potentially obtain attorney's fees for a representation that had been ongoing for well over a year as of removal, and (3) the complaint's additional requests for relief, including reinstatement and front pay. *See* Compl. at 4–5. I apply my judicial experience and common sense to conclude the gap has been bridged and the amount in controversy satisfied. *See Roe*, 613 F.3d at 1062.

## IV. CONCLUSION

Although each of these pieces of evidence, standing alone, would likely be insufficient to carry Berger's burden, I conclude that the record, taken as a whole, establishes by a preponderance of the evidence that the amount in controversy requirement has been satisfied. Thus, removal was appropriate and Jaskulski's motion to remand is **DENIED**.

**ORDERED** in Tampa, Florida, on December 7, 2023.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge